**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SC TRANSPORT INC. and | ) | |
| STEELCASE INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| CENTRAL STATES, SOUTHEAST AND | ) | |
| SOUTHWEST AREAS PENSION FUND, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT TO ENFORCE AND PARTIALLY MODIFY ARBITRATION AWARD

Plaintiffs SC Transport Inc. and Steelcase Inc. (collectively "SCT"), for their complaint against Central States, Southeast and Southwest Areas Pension Fund ("Defendant" or "Pension Fund"), state as follows:

## NATURE OF THE ACTION

1. SCT brings this action to enforce and partially modify an arbitration award issued by Judge Wayne Andersen ("Arbitrator") on December 26, 2023 regarding a multiemployer pension withdrawal liability assessment. 29 U.S.C. § 1401(b)(2); *Central States v. Safeway*, 229 F.3d 605 (7th Cir. 2000). A true copy the Arbitrator's opinion and award directing the Pension Fund to redetermine and reduce SCT's withdrawal liability is set forth in Exhibit A ("Award"). The Award was issued under the procedures set forth in Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1381 – 1453.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under ERISA Sections 4221(b)(2) and 4301(c), 29 U.S.C. §§ 1401(b)(2) and 1451(c).

3.     This Court has jurisdiction to enforce Judge Andersen's Award pursuant to 29 U.S.C. § 1401(b)(2).

4.     Venue lies in this Court under ERISA Section 4301(d), 29 U.S.C. § 1451(d), because the Pension Fund is an "employee benefit plan" under ERISA Section 3(3), 29 U.S.C. 1002(3), and because the Pension Fund is administered in the Northern District of Illinois, Eastern Division.

## PARTIES

5.     SC Transport Inc. and Steelcase Inc. are corporations organized under the laws of the state of Michigan.

6.     The Pension Fund is a multiemployer pension benefit plan within the meaning of ERISA Section 4001(a)(3), 29 U.S.C. 1301(a)(3), with its principal office located at 9377 West Higgins Road, Rosemont, Illinois.

## FACTS

The relevant facts are as follows:

**A.     The Pension Fund's Plan and Rehabilitation Plan**

7.     On March 24, 2008, the Pension Fund's actuary certified that the Fund was in critical underfunded status, as defined in 29 U.S.C. § 1085(b)(2). For each year from 2014 through 2019, the Pension Fund's actuary certified that the Pension Fund was in either critical or critical and declining status, as defined in 29 U.S.C. §§ 1085(b)(2) and 1085(b)(6).

8.     From March 26, 2008, through the present, the Pension Fund was subject to a Rehabilitation Plan designed to address its significant underfunded status, as required under 29 U.S.C. § 1085(a)(2) and (3) (the "Rehabilitation Plan"). The Rehabilitation Plan was and is described in Appendix M to the Central States, Southeast and Southwest Areas Pension Plan

("Plan"), and such Appendix is updated and supplemented annually, such that Appendix M-11 describes the 2019 version of the Rehabilitation Plan and Appendix M-13 describes the 2021 version of the Rehabilitation Plan.

9.　Under the Pension Fund's Rehabilitation Plan, participating employers, like SCT, were required to increase their contribution rates each year by the percentages set forth under the applicable schedule, which compound annually.

10.　Since adopting its Rehabilitation Plan in March 2008, the Pension Fund has not adopted a Plan amendment to increase benefits or future benefit accruals.

11.　On March 29, 2019, the Fund's actuary certified that the Pension Fund was in critical and declining status and projected the Fund to become insolvent by 2025.

**B.　SCT's Contribution Obligations Required Under the Rehabilitation Plan**

15.　SCT was obligated to contribute to the Pension Fund on behalf of certain covered employees from at least January 1, 2009, through March 31, 2019.  SCT had collective bargaining agreements with Teamsters Union Local No. 406 and was required to make the additional contributions to the Pension Fund based on the annually increasing rates required by the Rehabilitation Plan.

16.　A summary of SCT's contribution rates and yearly increases required under the Pension Fund's Rehabilitation Plan for 2014-2019 are reflected in the table below:

| Time Period | Weekly Contribution Rate |
|---|---|
| As of 12/31/2014 | $290.00 |
| 8/1/2015　– 7/31/2016 | $307.50 |
| 8/1/2016　– 7/31/2017 | $320.00 |
| 8/1/2017　– 7/31/2018 | $333.00 |
| 8/1/2018　– 3/31/2019 | $342.00 |

**C.** **The Withdrawal Liability Assessment against SCT.**

17.     In 2019, SCT permanently ceased to have an obligation to contribute to the Pension Fund, thereby effecting a complete withdrawal as defined in 29 U.S.C. § 1383 (the "Withdrawal"). As a result of the Withdrawal, in July 2019 SCT received a notice and demand for payment of withdrawal liability issued by the Pension Fund in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand"). The Notice and Demand notified SCT that it was required to discharge its liability in a lump sum of $33,652,457.49, or in 240 monthly payments of $76,320.61, with the first installment due on or before August 1, 2019, and a final installment due on or before July 1, 2039.  SCT has made all monthly installment payments as of January 1, 2024, which resulted in significant overpayments.

18.     29 U.S.C. §1085(g)(3) directs that "any increase in contribution rate[s] . . . made in order to enable the plan to meet the requirements of the . . . rehabilitation plan shall be disregarded in determining the highest contribution rate" used in assessing and determining an employer's pension withdrawal liability.

19.     Despite this clear statutory directive, the contribution rate used by the Pension Fund to determine the amounts demanded in the Notice and Demand was $342 per week, inclusive of the Pension Fund's Rehabilitation Plan contribution increases between 2014 and 2019.

20.     Had the Pension Fund followed the statutory mandate to exclude any contribution increases required or made under the Rehabilitation Plan, it should have used $290 per week in making its withdrawal liability assessment calculations; $290 per week was the highest contribution rate that SCT paid into the Pension Fund prior to January 1, 2015 and prior to the Rehabilitation Plan's required increases after 2014.

**D.     The Arbitration Proceedings and Award.**

21.     On February 3, 2020, after the Pension Fund refused SCT's request to adjust and redetermine the withdrawal liability assessment, SCT timely initiated arbitration with the Pension Fund pursuant to ERISA Section 4221(a)(1), 29 U.S.C. 1401(a)(1).

22.     The arbitration was undertaken under the auspices of the American Arbitration Association ("AAA") and identified as AAA Case No. 01-20-0000-4151.

23.     The parties were unable to agree to an arbitrator through the AAA selection process. As such, SCT filed an action to appoint an arbitrator in the U.S. District Court for the Western District of Michigan (Case No. 20-CV-00864), which was transferred to the U.S. District Court for the Northern District of Illinois (Case No. 21-CV-03984). The parties each filed a motion to appoint an arbitrator in the U.S. District Court for the Northern District of Illinois.

24.     On January 20, 2022, U.S. District Court Judge Charles R. Norgle appointed Arbitrator Judith La Manna to arbitrate the parties' dispute, or in the alternative Judge Wayne R. Andersen (Ret.) in the event Arbitrator La Manna was unwilling or unable to serve as the parties' arbitrator.

25.     After Arbitrator La Manna declined the appointment, Judge Andersen (Ret.) was appointed pursuant to Judge Norgle's Order.

26.     The parties' dispute was decided before Judge Wayne Andersen, without hearing, by cross-motions for summary judgment.

27.     Judge Andersen issued his Award on December 26, 2023. In the Award, the Arbitrator agreed with SCT that the post-2014 contribution rate increases under the Rehabilitation Plan cannot be used to compute the highest contribution rate. (Exhibit A at pp. 5-8.) The Award held that the highest contribution rate to be applied for purposes of calculating SCT's monthly

withdrawal liability payments should be $290 per week, the contribution rate that was in effect as of December 31, 2014. It directed as follows:

> "The Fund shall re-compute [SCT]'s withdrawal liability using the highest contribution rate of $290 per week. The Fund shall credit any overpayments generated by this recalculation, plus applicable interest, to reduce or eliminate the first installment payments scheduled to be paid by Claimants after the effective date of this Order."

(Exhibit A at pp. 11-12.)

28.     Using a contribution rate of $290, SCT's monthly withdrawal liability payments are $64,716.31 per month.

29.     This means that SCT has been making an overpayment in the amount of $11,604.30 every month since its August 2019 payment, for a total amount in overpayments of $626,632.20 before interest.

30.     Pursuant to the PBGC's rules regarding the selection of interest rates for refunds of withdrawal liability overpayments and the appropriate method for calculating interest on overpayments, *see* 29 CFR § 4219.31(d), § 4219.32(c), as well as Section 5.d. of the Fund's withdrawal liability rules (Exhibit B), SCT calculated the total interest on Steelcase's overpayment as of its January 2024 payment to be $130,693.76.

31.     On January 3, 2024, SCT sent the Pension Fund its proposed payment schedule reflecting reductions in future payments to account for SCT's overpayments and interest. *See* Exhibit C.

32.     Because additional interest will accrue unless the Pension Fund chooses to refund SCT's overpayment and interest in a lump sum, and because the relevant interest rate for the remainder of 2024 under the Fund's withdrawal liability rules is not yet known, SCT proposed

that the parties consult by December 1, 2024 to confirm the additional interest that has accrued, and finalize the payment schedule at that point.

33.     On January 22, 2024, SCT sent the Pension Fund another letter seeking to resolve the interest issue based on the Pension Fund's position if the Pension Fund would agree to fully comply with the Award as SCT had proposed. *See* Exhibit D.

34.     To date the Pension Fund has failed and/or refused to comply with the Award, including but not limited to redetermining and reducing SCT's withdrawal liability assessment and payment schedule.

## COUNT I – ENFORCEMENT

35.      SCT incorporates the allegations set forth in paragraphs 1-34 above.

36.     The Arbitrator held that, as a matter of law, the highest contribution rate that could be applied to calculate SCT's monthly withdrawal liability payments is $290—the rate in effect as of December 31, 2014—rather than $342, the rate the Pension Fund used when it assessed SCT withdrawal liability.

37.     To date the Pension Fund has refused to redetermine the withdrawal liability amounts or agree to a repayment schedule that accounts for SCT's overpayments and the interest on SCT's overpayments calculated pursuant to PBGC regulations and the Fund's own withdrawal liability rules.

38.     SCT is entitled to judgment enforcing the Arbitrator's Award and awarding SCT interest on its overpayments consistent with the above.

39.     Because the Pension Fund has failed and/or refused to comply with the Arbitrator's Award, SCT requests an order and judgment from the Court enforcing the Arbitrator's Award and directing that: (a) the Pension Fund redetermine and reduce SCT's withdrawal liability; (b) the

Pension Fund comply with the reduced payment schedule and accounting for interest on SCT's overpayments as set forth in Exhibit C; and (c) finalize the payment schedule with SCT on or about December 1, 2024 to reflect additional interest owed to SCT during the reduced payment period.

## COUNT II – PARTIAL MODIFICATION

40.    SCT incorporates the allegations set forth in paragraphs 1-34 above.

41.    As the Award recognizes, 29 C.F.R. §4221.10(c) provides for an award of fees when a party contests arbitration issues in bad faith.

42.    The Pension Fund has pursued and taken positions in this Arbitration in bad faith, including, but not limited to, refusing to follow the plain statutory command to disregard contribution rate increases required under the Rehabilitation Plan.  29 U.S.C. §1085(g)(3)(A).

43.    The Pension Fund has not only intentionally and consistently ignored the plain language in 29 U.S.C. §1085(g)(3)(A), but it also knew and admitted that none of the facts that would trigger a limited exception to this mandate existed or applied.

44.    The Pension Fund also continued to pursue its frivolous and baseless positions with respect to the impact of 29 U.S.C. §1085(g)(3)(A) despite, and in the face of, multiple arbitration awards directing it to follow the law and to disregard the Rehabilitation Plan contribution rate increases.

45.    Accordingly, the Arbitrator erred in not awarding SCT its reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, SCT requests the following relief:

1.    An order enforcing the Award, with the exception of his denial of costs and fees;

2. An order directing the Pension Fund to comply with the payment schedule set forth in Exhibit C, and to finalize the payment schedule accounting for additional interim interest owed to on or before December 1, 2024;

3. An order awarding SCT its costs, expenses, and attorney fees associated with its request for review of the Pension Fund's assessment, all arbitration proceedings, and all related court actions, including but not limited to pursuit of this instant action to enforce the Award; and

4. Any other relief that the Court deems just and proper.

Dated: January 25, 2024

Respectfully submitted,

SC TRANSPORT INC. and STEELCASE INC.


By: /s/ Michael L. Sullivan

Michael L. Sullivan (ARDC 6207822)
Jon E. Klinghoffer (ARDC 6270082)
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, IL 60603
(312) 201-4000
michael.sullivan@goldbergkohn.com
jon.klinghoffer@goldbergkohn.com


Keith E. Eastland
Brett Swearingen
Miller Johnson
45 Ottawa Avenue, SW, Suite 1100
Grand Rapids, MI 49503
(616) 831-1749
eastlandk@millerjohnson.com
swearingenb@millerjohnson.com

*ATTORNEYS FOR PLAINTIFFS (pro hac vice admission to be requested)*